IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| WBE COMPANY, INC., | ) | |
| | ) | CASE NO. BK06-80006-TJM |
| Debtor(s). | ) | A06-8124-TJM |
| RICHARD MYERS, Trustee of the | ) | |
| Chapter 7 Estate of WBE Company, Inc., | ) | |
| a Nebraska corporation, | ) | |
| | ) | |
| Plaintiff, | ) | CH. 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF OMAHA and LAMP, | ) | |
| RYNEARSON & ASSOCIATES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter is before the court on defendant City of Omaha's motion for partial summary judgment (Fil. #139) and resistance by the plaintiff (Fil. #151). Theodore R. Boecker, Jr., represents the Chapter 7 Trustee, and Robert J. Hamer and RoseMarie R. Horvath represent the City of Omaha. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is denied.

WBE Company filed this lawsuit to recover damages incurred in connection with the City of Omaha's alleged breach of contractual obligations in terminating the company's work on various road construction projects. The City now moves for partial summary judgment on two aspects of the case. First, it seeks to bar WBE's recovery of any damages for lost profits from WBE's concrete batch plant and pipe plant, and second, it seeks to bar all claims for recoverable damages accruing prior to April 19, 2004.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). An issue is genuine if it has a real basis in the record, and a genuine issue of fact is material if it might affect the outcome of the suit. Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial." Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record, without resorting to speculation. Hitt v. Harsco Corp., 356 F.3d 920, 923-34 (8th Cir. 2004).

The following facts are agreed on – or not disputed – by the parties:

1.  The plaintiff, WBE Company, Inc., was a corporation conducting business in Omaha, Nebraska.

2.  WBE is a construction company that performed road construction and excavation services for public and private entities.

3.  WBE was owned by Dolores Wiekhorst and managed by her sons Scott and Kurt. Scott Wiekhorst managed the company's operations.

4.  The City of Omaha is a municipal corporation in the State of Nebraska, a city of the metropolitan class in the State of Nebraska, and a political subdivision of the State of Nebraska.

5.  WBE undertook construction projects for the City, pursuant to written contracts entered into in 2002 and 2003, including projects generally known as:

   a.   P Street, Q Street and 17th Street in Omaha, Nebraska, OPW50013, with Street Improvement District 6870 (referred to as the "17th Street Project");

   b.   42nd Street and Paxton Street in Omaha, Nebraska, RNCL 5700 (referred to as the "Paxton Street Project");

   c.   35th Street and Vinton Street and 32nd Street and Hascall Street, in Omaha Nebraska, RNCL5841 (referred to as the "Vinton Street Project");

   d.   Fort Street from 108th to 120th Streets in Omaha, Nebraska, SP93-13 (referred to as the "Fort Street Project");

   e.   Omaha Convention Center and Gallup Public Streets, SP00-08S (referred to as the "Gallup Project"); and

   f.   132nd Street between West Dodge Road and Blondo Street in Omaha, Nebraska, SP97-14 (referred to as the "132nd Street Project") (all collectively referred hereinafter as the "City Construction Projects").

6.  Lamp, Rynearson & Associates, Inc. ("LRA") was retained by written contract by the

City as Engineer and Project Manager on the Gallup Project.

      7.  Metropolitan Utilities District ("MUD") and Omaha Public Power District ("OPPD") entered onto the WBE projects and conducted utility work.

      8.  In the Gallup Project, contract line items were removed.

      9.  The City of Omaha required WBE to leave the 132nd Street Project in October 2004.

      10.  The City of Omaha filed an amended proof of claim for $325,912.10 in WBE's bankruptcy proceeding.

      11.  WBE's bonding company, Liberty Mutual, made a payment to the City in the amount of $525,000.00 for claims related to the WBE projects.

      12.  WBE filed a claim with the Comptroller of the City of Omaha on or about October 19, 2005, and filed a tort claim with the City Clerk on or about January 31, 2005.

      Among the claims for relief in WBE's amended complaint is the allegation that the City's actions caused WBE to lose other business and prevented the company from realizing profits on other contracts "lost as a consequence of the interference with their business relationships and the interruption of its cash flow." Am. Compl. ¶ 52 (Fil. #13). Said damages include at least 20 million dollars for lost profits from WBE's concrete pipe production plant and at least 11 million dollars in lost profits from its concrete batch plant.

      The City challenges the calculations of WBE's expert witness of the damages resulting from the alleged lost sales of the pipe production and concrete batch plants. In particular, the City argues that the expert's analysis is based not on documented corporate financial statements, but on the "self-serving oral statements" of WBE's principals. In contract law, "gains prevented as well as losses sustained" are recoverable in a breach of contract action if the damages "are reasonably certain and such as might be expected to follow the breach." Aon Consulting, Inc. v. Midlands Fin'l Benefits, Inc., 748 N.W.2d 626, 639 (Neb. 2008). The damages need not be proved with mathematical certainty, but the evidence to establish them must be more than speculative and conjectural. Id. While lost profits from a new venture such as WBE's concrete and pipe production facilities may be difficult to determine because of an insufficient factual background on which to make projections, "where the evidence is available to furnish a reasonable [sic] certain factual basis for computation of probable losses, recovery of lost profits cannot be denied, even though a new business venture is involved." Nebraska Nutrients, Inc. v. Shepherd, 626 N.W.2d 472, 508 (Neb. 2001) (quoting El Fredo Pizza, Inc. v. Roto-Flex Oven Co., 261 N.W.2d 358, 364 (1978)).

      Here, the City's motion must be denied on this issue. Aon Consulting makes clear that the argument that an expert witness's calculation of lost revenue is unreliable is "an attack on the factual basis of the opinion, a criticism that goes to its weight, not its admissibility." Id. at 640-41. While it is "critical" that business records as well as oral testimony support a claim for lost profits, El

-3-

Fredo Pizza, 261 N.W.2d at 365, the determination of the weight to be given to a witness's testimony is the province of the fact-finder. Gran v. Internal Revenue Serv., 964 F.2d 822, 827 (8th Cir. 1992). Because the sufficiency of the evidence is a factual issue – one which is clearly in dispute here – summary judgment is inappropriate.

The City also argues that it cannot be held liable for such lost profits because they were not foreseeable to the City when the parties entered into the construction contracts. Ever since the English court decided Hadley v. Baxendale in the 19th century, black letter law has stated that damages for breach of contract are limited to those which are reasonably foreseeable to the defendant. The amount of damages foreseen by a defendant is irrelevant; the test is whether, at the time the parties entered into the contract, the defendant had reason to foresee that the plaintiff would suffer injury as a result of the defendant's actions. Harmon Cable Communications of Nebraska Ltd. P'ship v. Scope Cable Television, Inc., 468 N.W.2d 350, 362-63 (Neb. 1991); Birkel v. Hassebrook Farm Serv., Inc., 363 N.W.2d 148, 152 (Neb. 1985).

Based on the record currently before the court, the City's knowledge regarding the pipe plant and batch plant appears to be a disputed fact. The City denies knowing about WBE's plans for such plants until after the contracts were executed, believing at that time that WBE would subcontract with suppliers for pipe and concrete. In contrast, WBE maintains that Scott Wiekhorst met with the City's public works director in September 2001 and advised him of WBE's plans for its own production facilities for use in upcoming City projects if WBE was the successful bidder. Such factual disputes preclude the entry of summary judgment.

Finally, the City argues that WBE is statutorily limited to recovery for losses occurring within 18 months prior to the date it filed its claim with the City. WBE submitted a claim to the City on October 19, 2005, for ten million dollars in compensation for damages suffered by the company as a result of the City's actions with regard to WBE's termination from the City Construction Projects. The claim was submitted under Nebraska Revised Statute § 14-804, et seq., governing the filing of claims for money damages against cities of the metropolitan class. The City describes the claim as one for "unpaid labor, material and equipment costs and otherwise accounts of any kind." However, the claim itself does not use such terminology. After listing the allegedly wrongful and unjust acts of the City, such as terminating WBE from the City Construction Projects, withholding retainage payments, failing to pay for change orders and additional work performed, interfering with WBE's ability to obtain bond insurance, damaging WBE's reputation, and interfering with WBE's business in general, WBE demands

> compensation for the losses suffered by WBE and its business. In light of the irreparable damage to WBE's business, as well as the emotional damage and distress suffered by WBE, Scott Wiekhorst, Kurt Wiekhorst and Dolores Wiekhorst, WBE hereby demands payment of TEN MILLION DOLLARS and NO CENTS ($10,000,000.00) from the City.

Letter by James D. Sherrets, Ex. 1 to the Aff. of Allen R. Herink (Ex. C to Fil. #141).

State law provides that payment for claims for labor, salary, material, extra service, overtime, or account of any kind cannot be authorized, other than by court judgment, if the claims were not presented within 18 months after being incurred and payable.[1] Neb. Rev. Stat. § 14-806.[2] The Nebraska Supreme Court, in the only reported interpretation of § 14-806, has made clear that a claim accruing more than 18 months before it is filed is extinguished. Thompson v. City of Omaha, 455 N.W.2d 538, 542 (Neb. 1990) (dealing with wage claims). The court went on to explain its position:

> Section 14-806 was ostensibly enacted to serve two purposes: (1) to prevent a subsequent administration from overturning a prior administration's rejection of a claim and (2) to limit claims against the city to those claims that are timely presented and therefore place a more reasonable burden of investigation upon the city. Section 14-806 operates as a statute of limitations for wage claims against a city of the metropolitan class. To interpret the statute otherwise would create an awkward, and we think unintended, rule requiring a party to bring two separate claims before two separate tribunals. A party would be required to bring a claim before the city council or mayor and possibly appeal that determination, and at the same time the party would be required to bring a separate claim in the state courts for the part of the claim accruing more than 18 months before the filing of the claim.

Id.

The court also elucidated its interpretation of the portion of the statute permitting a court to

---

[1] The reported cases that deal with claims filed under Section 14-804 all arise in the context of wage or pension claims by city employees, but the Nebraska Supreme Court has made clear that any claims seeking monetary compensation are to be filed under that section. McNally v. City of Omaha, 731 N.W.2d 573, 564 (Neb. 2007) (plaintiffs challenged the city's findings regarding violations of property maintenance provisions of the municipal code; in determining whether it had jurisdiction over the plaintiffs' appeal, the Supreme Court found that a statute other than Section 14-804, et seq., controlled because the plaintiffs were not pursuing a claim for monetary compensation from the city). See also Calabro v. City of Omaha, 531 N.W.2d 541 (Neb. 1995) (plaintiffs' failure to file a notice of claim with the city under Section 14-804 did not preclude their declaratory judgment action because it was not a claim for money damages).

[2] 14-806. Claims; time limit for allowing; payment prohibited, when
    No bill or claim for labor, salary or material, or for extra service or overtime or account of any kind against the city, after it has been adversely reported on and rejected by the administration under which it has been incurred, and no bill, account or claim, not presented or claimed within eighteen months after it was incurred and payable, shall be allowed or authorized to be paid by any mayor and council except through the judgment of a court of competent jurisdiction. These provisions shall apply equally to any modification of the same account in whatever form it may be presented.

direct the City to pay a claim:

> The exception in § 14-806 which permits the mayor and council to pay claims pursuant to "the judgment of a court of competent jurisdiction" provides for an effective appeal where a claim accruing within 18 months of the filing of the claim is rejected by the administration under which it was incurred. Section 14-806 prevents a mayor and city council from overturning the decision of a prior administration to reject a claim, but provides that the mayor and city council may pay the claim once a court has determined that the rejection of the claim was wrongful. Without the exception, the statute would prevent an administration from paying wages accrued and properly claimed but wrongfully rejected by a prior administration.

Id.

That language makes clear that a court may order the payment of a claim only if the claim accrued within the 18 months preceding the filing of the claim. Contrary to WBE's argument, it does not give this court authority to order the City to pay the portions of WBE's claim that fall outside of the statute of limitations.

The issue then becomes when WBE's claims accrued. "Generally, a cause of action accrues and the period of limitations begins to run upon the violation of a legal right, that is, when the aggrieved party has the right to institute and maintain suit." Irving F. Jensen Co., Inc. v. Nebraska Dep't of Roads, 719 N.W.2d 716, 720 (Neb. 2006) (citations omitted). "A cause of action in contract accrues at the time of breach or the failure to do the thing agreed to. This is so even though the nature and extent of damages may not be known." Id. Many of the allegations made by WBE did not arise – and could not have arisen – until the City terminated WBE's work on the Construction Projects. See Jensen, where the Nebraska Supreme Court held that a contractor's breach of contract claim arose not when the State denied the contractor's request for additional compensation at the beginning of the project after the contractor determined that the project conditions were not as initially represented and the work would be more costly than anticipated, but rather when the State denied the contractor's claim at the end of the project for additional payment for the costs exceeding the contract amount. The court noted, first, that the contractor had complied with the contract's requirements regarding notice to the State of his intention to request additional compensation, and, second, that the contract required the State to pay the contractor for the actual quantity of work performed. The State's failure to pay could constitute a contract breach that did not accrue until the claim was denied, so the court ruled that the contractor's claim was timely filed.

It cannot be determined from this record which, if any, of WBE's claims may have accrued more than 18 months prior to the date it filed its claim with the City – a determination that necessarily will be based at least in part on the terms of the parties' contracts – so that portion of the City's motion for summary judgment must be denied.

IT IS ORDERED: The motion for partial summary judgment (Fil. #139) filed by defendant

City of Omaha is denied.

      DATED:      November 19, 2009

                                        BY THE COURT:

                                        /s/ Timothy J. Mahoney
                                        United States Bankruptcy Judge

Notice given by the Court to:
      Theodore R. Boecker, Jr.
      *Robert J. Hamer
      *RoseMarie R. Horvath
      U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.